**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CAROL J. REES,** *et al.***,**

    **Plaintiffs,**

    v.

**W.M. BARR & COMPANY, INC.,** *et al.***,**

    **Defendants**

**Case No.: 2:15-cv-2821
JUDGE SMITH
Magistrate Judge Jolson**

## OPINION AND ORDER

This matter is before the Court upon the Motion for Summary Judgment of Defendants W.M. Barr & Company and The Home Depot, Inc. (collectively "Defendants") (Doc. 31). Plaintiffs opposed Defendant's Motion (Doc. 32) and Defendants replied in support (Doc. 34). The Motion is now ripe for review. For the following reasons, Defendants' Motion is **GRANTED**.

### I.     BACKGROUND

This case arises from injuries sustained by Plaintiff Mrs. Rees when fumes from a home cleaning product—Goof-Off Professional Strength Remover ("Goof-Off")—ignited and caused third-degree burns to a substantial portion of Mrs. Rees' body. (Doc. 3, Compl. at ¶¶ 12–16). Mrs. Rees now brings a personal injury action and her husband, Jeff Rees (collectively "Plaintiffs") brings a claim of loss of consortium. (*Id*. at ¶¶ 12–24). At issue is whether Defendants W.M. Barr & Company, Inc., ("W.M. Barr") and The Home Depot, Inc. ("Home Depot") are liable for Plaintiffs' injuries resulting from the fire.

In August 2013, Plaintiffs removed carpet squares covering a basement play area once used by the Plaintiffs' children. (Doc. 31-5, Mrs. Rees' Dep. at 31). Although the carpet squares were easy to remove, the process left an adhesive residue on the concrete floor below. (*Id*. at 29). Concerned by the floor's unsightly appearance, Plaintiffs drove to Home Depot in Gahanna, Ohio, to find a product capable of dissolving the adhesive. (*Id.*). After reviewing the specifications of several products, Plaintiffs selected a 4.5 ounce can of Goof-Off—a product manufactured by W.M. Barr. (Doc. 31–3, Pls.' Resp. to Interrogs. at 3).

Goof-Off consists primarily of acetone, a volatile and flammable organic compound that "evaporates quickly at room temperature." (Doc. 32, Mem. Opp. at 3 (citing *Suarez v. W.M. Barr & Co., Inc.*, 842 F.3d 513, 516 (7th Cir. 2016); Doc. 31-9, Argento Expert Report at 4; Doc. 31-12, Goof-Off Safety Data Sheet at 3)). Use of acetone is particularly dangerous in enclosed areas, because vapors can congregate and combust. (Doc. 31-9, Long Expert Report at 4). Because misuse of acetone-based cleaners has the potential to result in bodily injury, labeling on the Goof-Off container warns that the product "is extremely flammable." (Doc. 31-10, Goof-Off 4.5oz Label; Doc 31-11 Goof-Off Gallon Label).

Additionally, containers of Goof-Off instruct consumers not to use the product in the presence of "heat, sparks, flame and all other sources of ignition." (*Id.*). Thus, consumers must "extinguish all pilot lights . . . and all other sources of ignition during use and until all vapors are gone." (*Id.*). Lastly, the Goof-Off label warns that the product should not be used in "small, enclosed areas" such as basements and bathrooms, and if used indoors, consumers must establish "cross ventilation of moving fresh air" by opening doors and windows. (*Id.*).

Upon returning home from Home Depot, Mrs. Rees tested the Goof-Off by applying a small amount of the product to the basement floor and then scrubbing the affected area with a

stiff broom. (Doc. 31-5, Mrs. Rees Dep. at 55–56). Although Mrs. Rees considered the test to be successful, she did not have enough Goof-Off to complete the job. (*Id.*). Consequently, Plaintiffs returned to Home Depot that night and purchased a gallon-size container of Goof-Off—the largest volume Home Depot carried. (*Id.* at 57). On the morning of August 14, 2013, Mrs. Rees began to use the gallon container of Goof-Off to remove the remaining adhesive. (*Id.* at 60). Although Mrs. Rees opened two basement windows for ventilation, she failed to establish the crossflow of air that the instructions on the Goof-Off container required because both windows were on the same wall. (*Id.* at 107–08). Mrs. Rees poured Goof-Off from the gallon container onto the concrete floor, little by little, until she had poured half of a gallon on the floor—significantly more than she had the day before. (Doc. 31-3, Pls.' Resp. to Interrogs. at 3; Doc. 31-6, Jeff Rees Dep. at 28–29). After roughly twenty minutes of scrubbing, Mrs. Rees heard a rush of air and felt flames move towards her. (Doc. 31-5, Mrs. Rees Dep. at 70, 72). Mrs. Rees slipped while trying to avoid the fire and fell into it. (*Id.* at 74–75).

Although Mrs. Rees was able to extinguish the fire and notify emergency personnel, she sustained substantial injuries, including third degree burns to her arms, legs, and face. (Doc. 31-5, Mrs. Rees' Dep. at 76–82; Doc. 3, Compl. at ¶¶ 9, 11). Mrs. Rees was admitted to the Ohio State University Wexner Medical Center's burn unit, where she received two months of treatment and rehabilitation. (Doc. 31-5, Mrs. Rees' Dep. at 85). Additionally, Mrs. Rees will likely require further medical care throughout the course of her lifetime. (Doc. 3, Compl. at ¶ 16). Her medical bills for this period and for her future care will allegedly rise to over $1,000,000. (*Id.*).

Plaintiffs' and Defendants' experts—as well as the responding fire department—agree that the flash fire was caused by an accumulation of Goof-Off vapor ignited by the pilot light of

the Plaintiffs' water heater, which Mrs. Rees failed to extinguish before attempting to remove the adhesive. (Doc. 31-7, Incident Report at 4; Doc. 31-8, Wharton Expert Report at 1; Doc. 31-9, Long Expert Report at 5, 9–10). Mrs. Rees testified that her reading of the label on the 4.5 ounce container made her generally aware that Goof-Off was highly flammable. (Doc. 31-6, Mrs. Rees Dep. at 47, 61, 97). Yet, Mrs. Rees did not read a portion of the label that further described the flammability hazard and the precautions necessary to avoid a flash fire. (*Id.* at 47–48). Furthermore, Mrs. Rees believed the label on the 4.5 ounce container provided all that she needed to know about Goof-Off and therefore declined to review the labeling on the gallon container. (*Id.* at 97).

Plaintiffs and Defendants agree that Mrs. Rees' injuries could have been avoided. However, the parties disagree as to who is at fault for Mrs. Rees' injuries. Plaintiffs argue that Goof-Off is defective and argue that the product was so hazardous that it was negligent for Defendants to sell it by the gallon. (Doc. 32, Mem. Opp. at 6). Next, Plaintiffs allege that the labeling on the 4.5 ounce and gallon containers were not sufficiently conspicuous so as to draw a reasonable consumer's attention to the flammability hazard and precautions necessary to prevent a flash fire. (*Id.* at 9). Conversely, Defendants argue that the instructions on the 4.5 ounce and one gallon containers of Goof-Off were adequate and warned of the precise hazard that in fact occurred. (Doc. 31-2, Defs.' Mot. at 16). Defendants allege that Mrs. Rees' failure to read the product's instructions and take adequate precautions constituted negligence which was the actual and proximate cause of Plaintiffs' injuries. (*Id.* at 9). United Health Care, as an intervenor who provided medical benefits to Mrs. Rees has also filed subrogation claims in this case against Defendants.

## II.     STANDARD OF REVIEW

Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

## III. DISCUSSION

Plaintiffs bring a personal injury claim against Defendant W.M. Barr and request compensation for injuries incurred by Mrs. Rees while using Goof-Off. Plaintiffs claim that Defendant W.M. Barr is strictly liable for Mrs. Rees' injuries on two grounds: (1) the Goof-Off label was not sufficiently conspicuous as to adequately warn consumers of the product's flammability; (2) that gallon containers of Goof-Off are inherently defective. Additionally, Plaintiffs argue that Defendant Home Depot was negligent for supplying Goof-Off, because it was reasonably foreseeable that use of the allegedly defective product would result in substantial injury to its customers. Plaintiff Jeff Rees alleges loss of consortium as a result of Mrs. Rees' injuries. Last, Defendants move for dismissal of the subrogation claims of Intervenor United Health Care. The Court will examine each of Plaintiffs' and Defendants' claims in turn.

### A. Failure to Adequately Warn

In Ohio, a product liability claim must proceed under the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code § 2307, *et seq.* Under OPLA, a manufacturer is liable to a claimant for compensatory damages when a claimant can establish—by a preponderance of the evidence—that a product was defective due to inadequate warning or instruction and that the defect was the proximate cause of the claimant's injury. Ohio Rev. Code § 2307.76; *McConnell v. Cosco Inc.*, 238 F. Supp. 2d 970, 976 (S.D. Ohio 2003) (Kemp, M.J.). A warning is adequate only if it reasonably discloses all inherent risks, and if the product is safe when used as directed. *McConnell*, 238 F. Supp. 2d at 976. Yet, a warning should not be considered adequate based on its content alone. *Id.* The warning may be deemed inadequate if it is in an obscure place such that "a reasonable jury could conclude that the warnings should have been somehow more noticeable." *Id.* at 977. Ultimately, when an adequate warning is given, the seller may assume that the warning will be read and followed, and the product shall not be considered defective

based on a failure to warn. *Rhenfrank v. Abbott Labs, Inc.*, 119 F. Supp. 3d 749, 782 (S.D. Ohio 2015) (Dlott, J.).

Plaintiffs fault the form in which the warning was given. Specifically, Plaintiffs assert that the Goof-Off warning was not sufficiently conspicuous (based on size, color, location and typography, etc.) so as to draw a reasonably prudent person's attention to the precautionary measures located on the product's side panel that were required to use the product safely. Defendants argue that the information on the Goof-Off container was plain, direct, and understandable—and, most importantly, warned of the hazard at issue. Defendants further assert that had Mrs. Rees read the product labeling in its entirety, the flash fire, and thus Mrs. Rees' injuries, would have been never occurred.

In *McConnell*, the plaintiffs purchased a high chair for their eleven-month-old son. 238 F. Supp. 2d at 973. The child suffered brain damage when he was left unsupervised and attempted to extricate himself from the chair. *Id.* The parents sued the manufacturer for strict products liability and negligence, alleging that the highchair was defective because it failed to adequately warn of the risks associated with leaving a child in the highchair unsupervised. *Id.* at 974–75. The Defendants moved for summary judgment. *Id.* at 974. Though labels located on the back of the chair and bottom of the tray warned "never leave a baby unattended" and to "always secure the baby with safety straps," this Court held that a genuine issue of fact existed as to whether the warnings were sufficiently visible so as to draw the attention of a reasonable prudent person. *Id.* at 977, 979. Because a jury could have found that the placement of the warnings made them inadequate, this Court held that summary judgment was inappropriate. *Id.* at 979–80..

Plaintiffs argue that they have provided sufficient expert testimony that the warning labels in this case were not sufficiently conspicuous. The problem with Plaintiffs' claim, however, is that Plaintiffs make no argument that the coloring or placement of the warning was the proximate cause of Mrs. Rees's injuries in this case. In Ohio, "where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's use of the product." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 451 (6th Cir. 2000) (alterations and quotations omitted). To overcome the presumption, the Defendants must set forth evidence that rebuts the presumption "a warning that is inadequate because it is not properly displayed can be the proximate cause of harm even if the user did not read the warning."

Defendants argue that Mrs. Rees' admission that she was not in the habit of reading warning labels in their entirety absolves Defendants of liability. (Doc. 31-2, Defs.' Mot. at 15). Mrs. Rees testified that she failed to read the side panels which instructed the user to (1) keep the product away from flame and all other sources of ignition; (2) extinguish all flames and pilot lights, and (3) if using indoors, to open all windows and doors and maintain a cross ventilation of moving fresh air across the work area. Defendants note that in her deposition, Mrs. Rees did not attribute her failure to read the Goof-Off side panel instructions to the inconspicuous coloring or inadequate placement of the product's warning labels. Rather, during her deposition, Mrs. Rees related the following regarding whether she read the warnings on the 4.5 ounce and gallon container of Goof-Off:

> Q. . . . Why not read the entire label on the 12th of August 2013?
> A. I basically was after what the product would do.
> Q. Were you in any kind of hurry at all in terms of getting out of Home Depot?
> A. No.
> Q. Are you just not in the habit of reading all the text on products?
> A. No.

> Q. No you're not in the habit?
> A. No.
>    . . .
> Q. Other than that, you just aren't generally in the habit in that you were after what the product would do and how it worked. Can you give me any other reason why you didn't read the entire label that day in the store?
> A. No.

(Doc. 31-5, Mrs. Rees' Dep. at 48–50).

In *McConnell*, this Court denied Defendant's motion for summary judgment because there was testimony which supported the plaintiffs' argument that the warnings were not adequately displayed. 238 F. Supp. 2d at 979. Accordingly, the Court found that there was a genuine issue of fact as to whether the obscure placement of the warning itself was the proximate cause of the injury.

In this case, however, Mrs. Rees' testimony supports the proposition that her failure to read the label had nothing to do with the color, size, or relative conspicuousness of the Goof-Off warning label. In contrast to high chair in *McConnell* where the warning labels were relatively hidden (located on the back of the chair and underneath the tray), here, the warnings were located on the face of the product, making it more likely that a reasonably prudent consumer would notice them. As Plaintiff herself admitted, the can informed her that the product was extremely flammable, but she chose to stop reading the warnings on the can. As Defendants argue, even Plaintiffs' expert failed to opine that more conspicuous text would have altered the outcome in this case. "Can I say within a reasonable degree of engineering certainty that if it had been a different color side panel, the fire wouldn't have happened? I don't think I can say that." (Doc. 34-1, Wharton Dep. at 146). Accordingly, Defendants have presented sufficient evidence that it was Mrs. Rees' general practice to not read warning labels, rather than the conspicuousness of the labels, that was the proximate cause of Mrs. Rees injuries. Accordingly,

Defendants' Motion for Summary Judgment with respect to the adequacy of warnings is **GRANTED**.

**B.     Defective Product**

Plaintiffs next argue that gallon canisters of Goof-Off presented such a substantial risk of injury to consumers so as to make the product defective. Defendants counter that Plaintiffs' argument misapplies OPLA to reach an absurd conclusion—namely, that volume of a product alone can make a product defective—and that Plaintiffs failed to provide any evidence of an increased danger from the volume of the container.

Under Ohio law, in order to establish that a product is defective, a plaintiff must prove "that at the time it left control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation." Ohio Rev. Code § 2307.75(A). The statute lays out a non-exhaustive list of factors to consider when determining the risks:

> (1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
>
> (2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;
>
> (3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
>
> (4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;
>
> (5) The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

Ohio Rev. Code § 2307.75(B). To determine the benefits, the statute also sets forth a non-exhaustive list of factors:

> (1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;
>
> (2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;
>
> (3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

Ohio Rev. Code § 2307.75(C).

Plaintiffs allege that the defect in this case was the size of the container itself, arguing it was "recklessly dangerous to sell gallon containers to consumers who defendants knew, or should have known, would not appreciate the risk when using large quantities of the product in a basement." (Doc. 32, Pls.' Mem. Contra at 7).

Although the weighing of the factors in § 2307.75(B) is a job for the jury, in this case, Plaintiffs have not presented evidence that the design of the gallon can actually increase the risk of harm. In this case, Plaintiffs cannot simply allege that there is a risk of a fire. Rather, Plaintiffs must prove that the size of the container creates an increased risk of fire and that increase in risk is greater than the benefit of selling the product in larger quantities. Plaintiffs point to no evidence in the record setting forth the increased risk caused by the sale of a gallon container. Plaintiffs' argument is further weakened by Mrs. Rees' own testimony that she poured small amounts on her floor repeatedly. Plaintiffs' make no attempt to explain how selling the product in smaller quantities would prevent the exact same behavior. Moreover, Plaintiffs do not discuss the specific factors set forth in the statute or discuss the benefits of the gallon can.

Plaintiffs claim that "[i]f a claim involves a simple device without complex features or designs, circumstantial evidence may be sufficient to establish that a defect existed." (Doc. 32,

Pls.' Mem. Contra at 8 (citing *Atkins v. GMC*, 132 Ohio App.3d 556, 564, 725 N.E.2d 727 (4th Dist. 1999))). While the size of a can may be simple, the increased risk of acetone accumulation caused by the size of a container or the mouth of its opening is exactly the kind of scientific question for which an expert opinion is needed. Essentially, Plaintiffs have not met any of the § 2307.75(B) factors because they have not provided any evidence that the gallon container changed the magnitude or risks of harm associated with the Goof-Off product. Plaintiffs' argument, while interesting, is underdeveloped from both a legal and evidentiary perspective.

Last, Plaintiffs also have a burden to provide the Court with a practical and technically feasible alternative design or formulation which would have prevented the harm. *McGrath v. Gen. Motors Corp.*, 26 F. App'x 506, 510 (6th Cir. 2002). For example, Plaintiffs must show that a smaller or differently designed can would have avoided the injuries in this case. Plaintiffs have not provided any such evidence or even argued as much. To the extent Plaintiffs claim the smaller can is the feasible alternative, Plaintiffs do not explain how the smaller product would serve any of the same benefits as having a larger can for larger projects. Summary judgment as to Plaintiffs' design defect claim is **GRANTED**.

C.  **Negligence of Supplier Home Depot**

Defendant Home Depot undoubtedly supplied Goof-Off to Mr. and Mrs. Rees and therefore is a supplier within the meaning of OPLA. Under OPLA, a supplier is liable for a product liability claim if the claimant can establish by a preponderance of the evidence that "[t]he supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages." Ohio Rev. Code § 2307.78.

"Under Ohio law, 'in order to recover in an action for products liability based upon negligence, a plaintiff must show that the defendant owed him a duty, that the duty was breached and that the injury proximately resulted from the breach.'" *Becton v. Starbucks Corp.*, 491 F.

Supp. 2d 737, 745–46 (S.D. Ohio 2007) (Holschuh, J.) (quoting *Freas v. Prater Constr. Corp., Inc.*, 60 Ohio St.3d 6, 573 N.E.2d 27 (1991)). "Ohio case law explains that a 'vendor is negligent when he has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect.'" *King v. Centerpulse Orthopedics, Inc.*, No. 1:05-CV-1318, 2006 WL 456478, at *4 (N.D. Ohio Feb. 24, 2006) (quoting *Brown v. McDonald's Corp.*, 101 Ohio App. 3d 294, 655 N.E.2d 440, 302 (9th Dist. 1995)). "In other words, a supplier can only be liable for negligence in a product liability case if it knew or had reason to know of the product defect." *Id.* Because the Court has found that to the extent any defect existed, probable cause did not, there can be no liability against Home Deport for Plaintiffs' injuries.

**D.     Loss of Consortium and Subrogation Claims**

Both Jeff Rees' loss of consortium claim and United Health Care's subrogation claims are derivative of the negligence and strict liability claims outlined above. Because the Court has already granted summary judgment in each of those claims, summary judgment as to Jeff Rees' loss of consortium claim and United Health Care's subrogation claim is **GRANTED**.

## IV.     CONCLUSION

Based on the foregoing, 'Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk shall **REMOVE** Document 34 from the Court's pending motions list and shall **ENTER** final judgment in favor of Defendants and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                                                      **__/s/ George C. Smith____**
                                                     **GEORGE C. SMITH, JUDGE**
                                                     **UNITED STATES DISTRICT COURT**